The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hedrick and the briefs of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 21 July 1997, the date of plaintiffs alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. Plaintiff began working as a dispatcher/service representative with defendant on 1 July 1997. Her rate of compensation was $300.00 per week plus 3% of gross service receipts and 2% of net profit of service receipts.
4. Plaintiff alleged that on 21 July 1997 she fell on defendants stairs and injured her left knee.
5. On 27 August 1997, defendant filed a Form 60, admitting the compensability of plaintiffs alleged injury.
6. Plaintiff was disabled and defendant paid temporary total disability compensation to plaintiff at the weekly rate of $200.01 for the 3.14 week period consisting of the following dates: 21 July 1997, 22 July 1997, 28 July 1997 and from 14 August 1997 through 1 September 1997.
7. On 14 August 1997, plaintiff underwent surgical repair of her left knee. Dr. R. Andrew Collins performed the surgery.
8. Plaintiff returned to work for defendant on 2 September 1997 in a light duty capacity. Plaintiff worked in a light duty capacity through 23 September 1997.
9. Plaintiff alleged that her left knee gave out on 24 September 1997 and resulted in total disability from 24 September 1997 through 28 September 1997.
10. Defendant paid plaintiff temporary total disability compensation at the rate of $200.01 per week from 24 September 1997 through 28 September 1997. Defendant completed and filed a Form 62 for the alleged period of disability beginning 24 September 1997. Defendant paid plaintiff the disability benefits on 7 October 1997.
11. On 29 September 1997, plaintiff was medically released to return to work and did return to work for defendant for four hours per day. Upon plaintiffs return to work, defendant began paying plaintiff wages at the rate of $10.00 per hour.
12. Defendant executed another Form 62 for the period of alleged partial disability beginning 29 September 1997 and began paying plaintiff temporary partial disability compensation at "various rates based upon an average weekly wage of $300.00.
13. Plaintiff was medically released to return to work in a light duty capacity for eight hours per day beginning 1 October 1997. Defendant limited plaintiffs work hours to four hours per day.
14. Plaintiff worked for defendant in a restricted capacity through 17 December 1997.
15. Defendant has not paid plaintiff any compensation since 17 December 1997.
16. Plaintiff was allegedly disabled from work for the period from 18 December 1997 through 4 January 1998.
17. On 23 December 1997, plaintiff underwent a second surgery for her left knee. Dr. Collins performed this second surgery.
18. Plaintiff was medically released to return to work and did return to work in a light duty capacity for a different employer on 5 January 1997.
19. Plaintiff alleges that her average weekly wage from her new employment for the period from 5 January 1998 through 19 August 1998 was $607.70.
20. On 19 August 1998, Dr. Collins determined that plaintiffs left knee injury had reached maximum medical improvement and rated her as having sustained a twenty-percent permanent impairment of her left leg.
21. Plaintiff underwent a second opinion evaluation by Dr. Kingery regarding the permanent impairment of her leg. Dr. Kingery concurred with Dr. Collins determination of maximum medical improvement and his rating of twenty percent permanent impairment.
22. Plaintiff elects to receive the more munificent remedy, which is compensation pursuant to G.S. 97-31 rather than pursuant to G.S. 97-30.
23. A set of plaintiffs medical records, marked as Stipulated Exhibit Number Two, is admitted into evidence.
24. A Form 22 for plaintiff, wage records for plaintiff and wage records for similarly situated employees, collectively marked as Stipulated Exhibit Number Three, are admitted into evidence.
25. The transcript of Judy Thompsons 26 May 1999 deposition, marked as Stipulated Exhibit Number Four, is admitted into evidence.
 EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Massey, Dr. Collins and Mr. Matchunis are OVERRULED.
 ***********
Based upon the findings of fact found by the Deputy Commissioner and the evidence of record, the Full Commission finds as follows
 FINDINGS OF FACT
1. In July 1997, plaintiff resided in the home of her friend, Judy Thompson. On Saturday, 19 July 1997, Ms. Thompson and plaintiff hosted a small party at their home. The party was attended by several friends, including Amy Davis, Beverly Freeman, Lynn Creech and an individual whose first name is Connie. Late in the evening on that date, plaintiff, Ms. Creech and Ms. Davis were outside of the home. Ms. Creech and Ms. Davis were inside of a car. Plaintiff was standing inside of the cars open door, talking to the other two women.
2. After observing plaintiff speaking with the other two women, Ms. Thompson, walked from the houses front porch to where plaintiff was standing. Ms. Thompson slapped plaintiffs face and turned to return to the house. When Ms. Thompson turned toward the house, plaintiff began to go after her but was tackled from behind by one of the guests, Connie.
3. Following this incident, plaintiff began limping and complaining of left knee pain. The following day, 20 July 1997, plaintiff continued to walk with a limp and complain of left knee pain.
4. Plaintiff owned more than one automobile. The automobile she customarily drove to work was a pickup truck equipped with a manual transmission. Her other car, a Honda Accord, was equipped with an automatic transmission. On Monday, 21 July 1997, plaintiff drove her Honda Accord to work because her left knee injury rendered her unable to drive the manual transmission truck. She arrived at work at approximately 7:30 a.m.
5. Between 7:30 a.m. and 8:00 a.m., plaintiff falsely reported to defendant and her co-workers that she had fallen down a set of stairs on defendants premises, injuring her left knee. Before leaving work to seek medical treatment, plaintiff telephoned Ms. Thompson and stated that she was going to say she fell off the steps.
6. Thereafter, Ms. Thompson heard plaintiff boasting to others that she would be receiving a large sum of money in settlement of her fraudulent workers compensation claim. Disturbed by plaintiffs deceitfulness and the unfairness of her actions, Ms. Thompson telephoned defendants office manager in April 1997 and informed him of plaintiffs misrepresentation. At that time, plaintiff and Ms. Thompson were no longer living together.
7. Plaintiff later learned that Ms. Thompson had informed defendant of her misrepresentation. In response, plaintiff drove to Ms. Thompsons home and angrily confronted her. During the confrontation, plaintiff used a knife to vandalize Ms. Thompsons living room furniture. As a result, Ms. Thompson telephoned the police and completed a police report. Since this incident and as of the date of the hearing before the Deputy Commissioner, plaintiff and Ms. Thompson had reconciled their differences.
8. Plaintiff did not fall down stairs on defendants premises on 21 July 1997. In fact, plaintiff injured her left knee during a physical altercation at her home on 19 July 1997. During her testimony at the hearing before the Deputy Commissioner, plaintiff falsely maintained that she injured her knee when she fell down stairs, that she was not tackled from behind on 19 July 1997 and that she did not injure her knee on that date.
9. Based upon plaintiffs misrepresentations as to the cause of her knee injury, defendant paid plaintiffs disability compensation and medical expenses for treatment of her left knee injury. Defendant would not have paid plaintiff disability or medical compensation if she had not falsely reported that her left knee injury occurred while working for defendant.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant. Therefore, plaintiff is entitled to no compensation under the North Carolina Workers Compensation Act. G.S. 97-2(6).
2. As a result of plaintiffs fraudulent assertion that she injured her left knee while working for defendant, defendant paid and plaintiff received substantial amounts of workers compensation. Therefore, defendant is entitled to be reimbursed all monies paid to any person as a result of plaintiffs fraudulent claim, specifically including all disability and medical compensation, all costs, expert witness fees and all attorneys fees. G.S. 97-88.2.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following
 ORDER
1. Under the law, plaintiffs claim for workers compensation must be, and the same is hereby, DENIED.
2. Within the time period set forth in G.S. 97-18(g), plaintiff shall pay defendant an amount equal to all workers compensation previously paid, all attorneys fees, expert witness fees and all costs incurred due to her fraudulent claim.
3. Plaintiff shall pay the costs due the Commission.
This the ___ day of March 2001.
 S/_______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/____________________ BERNADINE S. BALLANCE COMMISSIONER
S/____________________ RENE C. RIGGSBEE COMMISSIONER